# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES, for the use and benefit of MANGANARO MIDATLANTIC LLC | * * * * | |
| v. | * * * | Civil No. PX-16-2816 |
| GRIMBERG/AMATEA JV, JOHN C. GRIMBERG COMPANY, INC., AMATEA, LLC and HARFORD ACCIDENT AND INDEMNITY COMPANY | * * * * * * | |

********

## MEMORANDUM OPINION

Use Plaintiff Manganaro Midatlantic, LLC ("MMA") brings this lawsuit against defendants Grimberg/Amatea JV ("GAJV"), John C. Grimberg Company, Inc. ("Grimberg"), and Amatea, LLC ("Amatea") seeking damages for breach of contract. Now pending is MMA's motion for partial summary judgment. (ECF No. 25). MMA seeks summary judgment in the amount of $216,506.38, leaving $1,249.00 in dispute to be litigated at trial. The parties have fully briefed the motion, and no oral argument is necessary. *See* Local R. 105.6. For the reasons set forth below, Plaintiff's motion for partial summary judgment is denied.

## BACKGROUND

This dispute concerns allegedly unpaid sums arising under a construction subcontract. (ECF No. 1 ¶ 1). On or about September 4, 2012, defendant GAJV entered into a prime contract ("Prime Contract") with the Department of Army, Corps of Engineers ("Corps") for the construction of an addition and renovation to the Defense Information School at Fort Meade, Maryland ("Project"). (ECF No. 1 ¶ 1, 10). GAJV is an unincorporated joint venture comprised

of two construction companies, defendants Grimberg and Amatea. (ECF No. 1 ¶ 10). On January 31, 2013, GAJV entered into a drywall, masonry, and acoustical subcontract ("Subcontract") with MMA. (ECF No. 25-3, p. 2). The Subcontract defined MMA's scope of work:

> Furnish and install drywall systems, acoustical ceiling systems, acoustical wall treatment, plaster systems, spray foam insulation, building insulation, and air vapor barrier trades complete per plans, specifications, and addenda.

(ECF No. 25-3, p. 2).

The original Subcontract sum, subject to adjustments by Change Order or other Subcontract provisions, was $2,350,000. (ECF No. 25-3, p. 2). MMA invoiced GAJV a total of $2,780,153 for its work on the Project. (ECF No. 25-23, p. 2). GAJV has paid MMA $2,562,397.62 to date, leaving an allegedly outstanding balance of $217,755.38. (ECF No. 25-6, p. 7). GAJV contends that MMA is owed no further monies. More specifically, GAJV argues that (1) MMA is not entitled to payment on three Change Orders totaling $184,131 and (2) GAJV is entitled to set-off for seven backcharges that it assessed against MMA, totaling $86,165.03. (ECF No. 26, p. 4). The propriety of three Change Orders and six backcharges are centrally featured in this motion.

**I. Change Orders**

On August 4, 2014, the Corps issued a stop work order on the Project, which put a temporary end to MMA's work. (ECF No. 25-10, p. 8). The stop work order remained in effect until March 6, 2015, and caused MMA to incur additional costs to perform its scope of work. (ECF Nos. 26-15, p. 10, 25-10, p. 3). Accordingly, MMA submitted three Change Order requests for (1) sheathing and inefficiencies, (2) scheduling impacts, and (3) material escalation, adding $184,131 to the contract price. (ECF No. 25-9, p. 3; ECF No. 25-10, p. 3; ECF No. 25-

11, p. 3). MMA attributed the Change Order requests to "cost impacts due to schedule changes including schedule changes attributed to stop work order." (ECF No. 25-10, p. 3).

In accordance with the Prime Contract, GAJV submitted a proposal to the Corps for the increased costs resulting from the stop work order, including MMA's Change Order requests. (ECF No. 26-15, p. 2-6). The Corps in response advised GAJV that it "[was] unable to process this request with the information as provided." (ECF No. 26-16, p. 2). The Corps instructed further as to additional information needed to justify MMA's Change Order requests. (ECF No. 26-16, p. 2-3). MMA, according to GAJV, failed to provide the Corps with this required additional information and failed to comply with the dispute process under the Subcontract. (ECF No. 26-6, p. 45). MMA does not dispute these contentions but rather contests the legal applicability of the pertinent contractual provisions.

GAJV also issued adjustments to MMA's account in accordance with the following Change Order requests: (1) GAJV Add/Deduct Number 12 in the amount of $21,419 for Sheathing and Inefficiencies, (2) GAJV Add/Deduct Number 13 in the amount of $75,940 for Scheduling Impacts, and (3) GAJV Add/Deduct Number 14 in the amount of $86,772 for Material Escalation. (ECF No. 25-9, p. 2; ECF No. 25-10, p. 2; ECF No. 25-11, p. 2) (Collectively the "Change Orders"). GAJV required MMA to bill for each change and subjected each Change Order to the same terms and conditions stated in the original Subcontract. *Id.*

MMA signed, returned, and invoiced for the Change Orders. *Id.* GAJV claims that MMA's invoices did not comply with the Subcontract because the Change Orders had not been first approved by the Corps prior to invoicing. (ECF No. 26, p. 19; ECF No. 25-3, p. 2; ECF No. 26-16, p. 2). MMA contends that GAJV has already paid MMA $184,131 for the Change Orders and is instead withholding base contract money from MMA. (ECF No. 25-1, p. 7). GAJV

3

disputes that such payment is for the Change Orders, and claims that MMA is not due any outstanding payments. (ECF No. 26-6, p. 14, 18, 20).

MMA relies on GAJV's Committed Cost Status Report ("Report") to support its claim that GAJV has paid MMA for the Change Orders. (ECF No. 25-14, p. 2). Relevant to this dispute are the columns on the report titled "Total Invoiced," "Amount," "Amount Paid," and "AP Balance." (ECF No. 25-14, p. 2). For the Sheathing and Inefficiencies Change Order, Job Proposal Number 71-831-147, the Report lists the "Total Invoiced" and "Amount" as $21,419.00. *Id.* The "Amount Paid" is 21,419.00 and the "AP Balance" is zero. *Id.* For the Change Order for Scheduling Impacts, Job Proposal Number 71-831-152, the Report lists the "Total Invoiced" and the "Amount" as 75,940.00. *Id.* The "Amount Paid" is 75,940.00 and the "AP Balance" is zero. For the Change Order for Material Escalation, the Report lists the "Total Invoiced" as 86,772.00 and the "Amount" as 34,708.80. *Id.* The "Amount Paid" is 34,708.80 and the "AP Balance" is zero. *Id.* According to MMA, the Report's listing of the balance for each Change Order as zero shows GAJV has paid for the Change Orders. (ECF No. 25-1, p. 18).

Handwritten notes on the Report from Kimberly Graham indicate that the Corps neither paid for nor approved the Orders, and thus signify that GAJV never intended to pay any Change Order amounts that were marked "0%." (ECF No. 26-3, pp. 3, 7). By contrast, "100%" in the same handwriting appears on other job proposals on the Report, indicating that the Corps approved the proposal and it was paid in full. (ECF No. (ECF No. 25-14) 26-3, p. 6). Graham further attested that the line items in the "Amount Paid" column do not in fact reflect amounts paid because her unfamiliarity with the cost reporting system led to inaccurate entries. *Id.* at 3.

## II. Backcharges

In October 2016 and January 2017, GAJV served MMA with seven backcharges, six of which are relevant to MMA's current motion. (ECF No. 25-1, p. 7). Three of the backcharges, totaling $38,035.74, concern exterior plywood sheathing. (ECF No. 25-15, p. 2, 6, 14). The fourth backcharge, amounting to $17,595, is for sealing fire walls. (ECF No. 25-19, p. 2). Fifth is a backcharge for labor assistance, totaling $11,231. (ECF No. 25-21, p. 2). The final backcharge, amounting to $18,054, is for sprinkler adjustments. (ECF No. 25-22, p. 2). MMA contends the backcharges are without merit and should not reduce outstanding amounts owed under the Subcontract. (ECF No. 25-1, p. 7).

### A. Plywood Sheathing

With regard to the plywood wall sheathing backcharges, MMA's scope of work under the Subcontract includes furnishing and installing drywall systems. (ECF No. 25-3, p. 2). GAJV claims that plywood sheathing is part of furnishing and installing drywall systems, pointing to contract drawings to support this claim. (ECF No. 26-6, p. 22, 27). MMA, however, insists plywood sheathing was not included in the scope of the Subcontract, making this backcharge invalid. (ECF No. 25-1, p. 23).

### B. Sealing Fire Walls

According to GAJV, MMA failed to install wall assemblies that complied with applicable fire-rating standards. (ECF No. 26-6, p. 32). In backcharging MMA for this work, GAJV provided MMA photographs of wall assemblies that failed to meet fire-rating standards. (ECF No. 26-6, p. 33-35; ECF No. 26-8, p. 2-3). Although GAJV contends that this work fell within MMA's scope of work as part of the installation of wall systems (ECF No. 26-6, p. 32; ECF No. 25-3, p. 2), MMA characterizes this same work as for firestopping, which was specifically

5

excluded from MMA's scope of work in the Subcontract. (ECF No. 25-3, p. 2; ECF No. 25-1, p. 25). GAJV argues that this backcharge is invalid as outside the scope of MMA's work. (ECF No. 25-1, p. 26).

### C. Labor Assistance

The next backcharge to MMA is for alleged costs that GAJV incurred to provide labor to complete MMA's work. GAJV points to emails documenting labor assistance requests in January and February 2014 and photographs capturing the work that MMA allegedly had failed to complete. (ECF No. 25-21, p. 2-5). MMA challenges the backcharge as unsupported to justify the alleged costs. (ECF No. 25-1, p. 26).

### D. Sprinkler Adjustments

GAJV also contends that MMA built bulkheads one room at the wrong height and as a result, the bulkheads blocked sprinkler heads and impaired sprinkler functioning. (ECF No. 26-6, p. 39-41). GAJV incurred costs associated with adjusting the sprinklers for which a backcharge is warranted. (ECF No. 25-22, p. 2-6). MMA claims ignorance that the bulkheads were installed at the wrong height and further contests the documentation underlying the backcharge as insufficient. (ECF No. 25-1, p. 27).

## STANDARD

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). A genuine issue of material fact exists where, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary

judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When reviewing a motion for summary judgment, the court must take all facts and inferences in the light most favorable to the non-moving party, but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). *See also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). A court should enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's case and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## ANALYSIS

Plaintiff first argues that no genuine issue of disputed fact exists as to its breach of contract claim for failure to pay $216,506.38 of the $217,755.38 claim. Defendants disagree, arguing principally that no amount is due on the Change Orders totaling $184,131.00, and secondarily that MMA owes defendants $86,165.03 in backcharges. Each argument is addressed in turn.

7

**I. Change Orders**

**A. Delay Damages Provision**

GAJV first argues that summary judgment is inappropriate as to the claimed Change Orders because they are in fact delay damages under the Subcontract. Alternatively, GAJV argues that even if the Change Orders are not delay damages, no amount is due because MMA failed to satisfy conditions precedent to payment on the Change Orders.[1] Viewing all facts and inferences in the light most favorable GAJV as the nonmoving party, sufficient evidence supports GAJV's claims and defenses, precluding summary judgment on $184,131.00 of Plaintiff's claim.

Resolving this motion in part requires interpreting the delay damages provision of the Subcontract. Under Virginia law,[2] a contract becomes the law governing the case unless "it is repugnant to some rule of law or public policy." *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984) (citing *Mercer v. S. Atlantic Ins. Co.*, 111 Va. 699, 704 (1911)). Courts construe contracts as written, using the intention of the parties as a guide. *City of Chesapeake v. Dominion SecurityPlus Self Storage, LLC*, 291 Va. 327, 335 (2016); *Palmer & Palmer Co. v. Waterfront Marine Const., Inc.*, 276 Va. 285, 289 (2008). If the terms of a contract are clear and unambiguous, then the court construes the contract according to its plain meaning. *City of Chesapeake v. Dominion SecurityPlus Self Storage, LLC*, 291 Va. 327, 335 (2016). Further, because courts "will not rewrite contracts," parties to a contract will be held to the terms upon

---

[1] GAJV also presents evidence that MMA was the first to breach the Subcontract, thereby barring it from bringing its breach of contract claim. Additionally, GAJV contends the Change Orders are not supported by consideration. For purposes of this motion, the Court assumes without deciding that the Change Orders are supported by consideration and that MMA is not barred from bringing its claim.

[2] The parties agree that Virginia law applies per the Subcontract. (ECF No. 25-1, p. 12; ECF No. 25-3).

which they agreed." *Id.* Contract terms are therefore binding on the parties unless the terms are contrary to law or public policy. *Id.*; *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984). This is true even for terms limiting the parties' risk of loss or placing contingencies on rights under the contract. *See Kocinec v. Pub. Storage, Inc.*, 489 F. Supp. 2d 555, 558 (E.D. Va. 2007); *Winn v. Aleda Constr. Co.,* 227 Va. 304, 307 (1984).

In support of its delay damages argument, GAJV points to Article 9 of the Subcontract which exempts from payment such claims. Article 9 of the Subcontract between GAJV and MMA is a "no damages for delay" provision. This clause limits GAJV's liability for delays occurring beyond GAJV's control and for delays caused by the Corps. (ECF No. 25-3, p. 4).[3] It limits MMA's recovery to reimbursement for damages for delay actually recovered from the Corps and provides MMA a remedy to pursue delay damages against the Corps. (ECF No. 25-3, p. 4). Additionally, the provision indicates that where the delay is caused by GAJV, MMA is not entitled to recover monetary damages and is only entitled to a time extension. *Id.*

---

[3] Article 9 of the parties' Subcontract provides,
> The Joint Venture shall not be liable to the Subcontractor for any delay, whether foreseeable or not, occurring beyond the Joint Venture's control or for any delay caused by the Owner, any of its employees, agents or representatives, any other subcontractors or suppliers or any third parties. The Subcontractor shall be entitled only to reimbursement for any damages for delay actually recovered from the Owner, and the Subcontractor shall also be entitled, entirely at its own expense, to exercise against the Owner all rights available under the provisions of the Prime Contract to recover said damages. The Joint Venture shall have the right, at any time and for any reason, to delay or suspend the whole or any part of the work herein contracted for and the Subcontractor expressly understands and agrees that it shall not be entitled to any monetary compensation whatsoever for any delay or suspension ordered or caused by the Joint Venture, and that a time extension only shall be granted for such delays or suspensions: (1) are of a kind not contemplated by the parties; (2) amount to an abandonment of the contract; or (3) are caused by active interference.

(ECF No. 25-3, p. 4).

MMA responds that Article 9 of the Subcontract is unenforceable under Virginia law, and even if it is enforceable, the Change Orders are not requests for delay damages. With regard to the enforceability of Article 9, where, as here, the contract was executed prior to July 1, 2015, such "no damages for delay" clauses are generally valid and enforceable in Virginia. *See, eg., McDevitt & Street Co. v. Marriot Corp.*, 713 F. Supp. 906, 921 (E.D. Va. 1989), *aff'd in part*, *rev'd in part on other grounds*, 911 F.2d 723 (4th Cir. 1990). The same clause in a contract executed after July 1, 2015, however, is unlikely to be enforceable. VA Code Ann. § 11-4.1:1. ("A provision that waives or diminishes a subcontractor's… right to assert payment bond claims or his right to assert claims for demonstrated additional costs in a contract executed prior to providing any labor, services, or materials is null and void."). Further, statutes in Virginia are "always construed to operate prospectively unless a contrary legislative intent is manifest," and no evidence reflects the legislature's manifest intent to apply this statute retroactively. *See, e.g.*, 2014 Virginia Senate Bill No. 891 (Virginia 2015 Regular Session). Article 9 of the Subcontract, therefore, is enforceable. *See Berner v. Mills*, 265 Va. 408, 413 (2003). *See* VA Code Ann. § 11-4.1:1.[4]

Because Article 9 of the Subcontract is enforceable, if the Change Orders are found to be damages for delay, MMA is only entitled to reimbursement from GAJV for payments actually recovered from the Corps. (ECF No. 25-3, p. 4). In this scenario, MMA would be entitled to pursue these damages directly from the Corps, but not GAJV. *Id.*

---

[4] Virginia law distinguishes delay damages from active interference damages. *Dennis Stubbs Plumbing, Inc. v. Travelers Cas. and Sur. Co. of America*, 67 Fed. Appx. 789, 792 (4th Cir. 2003). Delay damages are costs associated with additional time necessary to complete the contract work; active interference damages are costs associated with a party's wrongful acts. *See id*. Delay damages clauses do not preclude active interference damages. *See id.* Notably, the Subcontract here includes an exception for active interference damages which are recoverable.

Although MMA disputes that the Change Orders are requests for delay damages. (ECF No. 26, p. 30), the evidence suggests otherwise. (ECF No. 25-9, p. 3; ECF No. 25-10, p. 3; ECF No. 25-11, p. 3). The Change Order request for Sheathing and Inefficiencies, for example, attributes the request to "steel support delays." (ECF No. 25-9, p. 3). Similarly, the Change Order request for Scheduling Impacts states, "Manganaro has experienced cost impacts due to schedule changes including schedule changes attributed to [the] stop work order." (ECF No. 25-10, p. 3). The Change Order request for Material Escalation is similarly phrased. (ECF No. 25-11, p. 3). Consequently, a reasonable juror could conclude the Change Orders are requests for delay damages, subject to the terms of Article 9 of the Subcontract, and not recoverable against GAJV. (ECF No. 26-16, p. 2-3). MMA's motion for partial summary judgment is therefore denied with respect to Change Order amounts.

### B. Conditions Precedent to Payment

Alternatively, summary judgment as to the Change Orders is inappropriate because genuine disputes of material fact exist regarding conditions precedent to payment. GAJV contends that MMA's right to payment on the Change Orders is contingent on certain conditions precedent which remain unperformed. The first alleged condition precedent is the Corps must approve all Change Orders prior to MMA invoicing GAJV. The second alleged condition precedent is MMA must follow the dispute resolution procedure provided in the prime contract before filing any action against GAJV related to the Subcontract.

Under Virginia law, parties can make certain rights under the contract contingent on the fulfillment of certain conditions. *See Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984). In such instances, "[those] conditions must be performed unless the other party prevents or waives their performance." *Id.* A party to a contract can waive any provision of the contract, either

11

expressly or by conduct. *Virginia Elec. and Power Co. v. Norfolk Southern Ry. Co.*, 278 Va. 444, 476 (2009). "Because the right is to the benefit of the party, the right may be waived by the party either expressly or impliedly by conduct, acts, or course of dealing inconsistent with the conferred right." *Id.* Waiver of a provision will be enforced when the evidence clearly shows that the waiving party had both knowledge of the provision and intent to waive the benefits bestowed as a result. *Id.*

As to the first alleged condition precedent, approval by the Corps, Paragraph 11 of the Special Instructions of the Subcontract specifically states that "[a]ll change orders must be assigned an Grimberg/Amatea JV PR # and invoiced when approved by the Corps of Engineers." (ECF No. 25-3, p. 2). It is undisputed that the Corps has not approved the Change Orders. (ECF No. 26, p. 33; ECF No. 29, p. 10). The plain language of Paragraph 11 of the Special Instructions in the Subcontract and Change Orders themselves[5] render approval by the Corps a condition precedent. (ECF No. 25-3, p. 2; ECF No. 25-9, p. 2; ECF No. 25-10, p. 2; ECF No. 25-11, p. 2). According to GAJV, the failure of this condition precedent means MMA has no right to payment on the Change Orders. (ECF No. 26, p. 33). The Corps has undisputedly not approved the Change Orders, so the condition precedent was not performed prior to MMA invoicing GAJV. (ECF No. 29, p. 10).

MMA, however, contends that GAJV waived this condition precedent by paying the amount due on the Change Orders. (ECF No. 25-1, p. 19). In support of its waiver argument, MMA relies on GAJV's March 2016 Committed Cost Report as evidence that GAJV paid the Change Orders. (ECF No. 25-14, p. 2). On this Report, a balance of zero is recorded under the

---

[5] Each Change Order states, "This change order is subject to the same terms and conditions as stated in your original subcontract." (ECF No. 25-9, p. 2; ECF No. 25-10, p. 2; ECF No. 25-11, p. 2).

"AP Balance" for each Change Order, and the "Amount Paid" column reflects payment on each Change Order. *Id.*

GAJV maintains it has not made any payments on these Change Orders, and that MMA misapprehends the Report. (ECF No. 26, p. 34). GAJV relies on Graham's handwritten notes and declaration explaining that her notes reflect that no payment was made on the Change Orders.[6] (ECF No. 26, p. 34; ECF No. 26-3, p. 7). Similarly, as Graham attests, the individual line items in the Amount Paid column simply do not reflect payment was made for those line items. (ECF No. 26-3, p. 3). Because waiver of a condition precedent may trigger GAJV's liability to MMA on the Change Orders, *See Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984), the competing evidence regarding prior payment creates a genuine issue of material fact for resolution at trial. Summary judgment in MMA's favor is not warranted as a result.

Similarly, factual disputes render summary judgment for Plaintiff impossible with regard to the second alleged condition precedent, participation in the dispute resolution process. The Special Subcontract Provision 2 states, "[t]he Subcontractor expressly binds itself to pursue and fully exhaust the disputes resolution procedure provided in the Prime Contract as a condition precedent to commencement of filing any other action against [GAJV] for any claim arising out of or related to performance of the Subcontractor's work hereunder." (ECF No. 25-3, p. 2). Article 15 of the Subcontract, entitled "Disputes," also provides that "[t]he Subcontractor shall be required as a condition precedent to the submission of any claim against the Owner to certify

---

[6] MMA argues the court should ignore the declaration of Kimberly Graham. (ECF No. 29, p. 10). This declaration, ECF No. 26-3, was submitted by GAJV to support its claim that MMA misinterprets the Committed Cost Status Reports. (ECF No. 26, p. 20). Graham identifies her handwriting on the Report and clarifies what she meant by her notes. (ECF No. 26-3). Because this evidence is within her personal knowledge, it is admissible. *See* Fed. R. Evid. 602 (Witnesses "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

13

its claim in accordance with any and all certification requirements in the Prime Contract." (ECF No. 25-3, p. 4). GAVJ thus contends that because MMA did not engage in the dispute resolution process, summary judgment in favor of payment for the Change Orders is unwarranted.

MMA responds that Article 15 of the Subcontract does not apply to its disputes with GAJV because it references the Prime Contract which reaches disputes concerning only the Corps. (ECF No. 29, p. 17). Alternatively, MMA contends that even if the disputes resolution condition precedent did apply, GAJV failed to provide a copy of the Prime Contract for this Court's review, and GAJV cannot succeed in this claim. *Id.* Neither argument is availing. Because MMA's payment dispute arises from the Corps' Stop Work Order, the dispute indeed concerns the Corps and the GAJV. Additionally, the terms of the Prime Contract appear pertinent to whether MMA is entitled to payment on the Change Orders, and so the failure to include the Prime Contract precludes resolution at the summary judgment stage.

**II.     Backcharges**

GAJV next argues that summary judgment for Plaintiff cannot lie because Plaintiff's claimed balance is offset by the backcharges that GAJV had issued to MMA. (ECF No. 26, p. 7). Six backcharges—three for plywood sheathing, one for sealing fire walls, one for labor assistance, and one for sprinkler adjustments—totaling $84,915.74 are relevant to MMA's current motion. (ECF No. 25-15, p. 2, 6, 14; ECF No. 25-19, p. 2; ECF No. 25-21, p. 2; ECF No. 25-22, p. 2). Each is discussed more fully below.

**A. Plywood Sheathing**

MMA disputes GAJV's backcharges for plywood sheathing totaling $38,035.74, claiming plywood sheathing was not included in MMA's scope of work under the Subcontract. (ECF No. 25-1, p. 22-24). The "interpretation of a written contract is a question of law that turns

upon a reading of the document itself…." *Seabulk Offshore, Ltd. v. American Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004). The plain language of the Subcontract renders MMA responsible for "furnish[ing] and install[ing] drywall systems." (ECF No. 25-3, p. 2). GAJV argues "drywall systems" includes plywood sheathing. (ECF No. 26-6, p. 22). To support its claim, GAJV points to MMA's Proposal, which stated that MMA would provide "Rough Carpentry (as applies)." (ECF No. 26-5, p. 2). According to GAJV, "Rough Carpentry" includes plywood sheathing.[7] (ECF No. 26-6, p. 119). Even if it is true that "Rough Carpentry" includes plywood sheathing, MMA's Proposal was not incorporated by reference into the Subcontract. (*See* ECF No. 25-3, p. 2-6). Nor was plywood sheathing specifically identified in the Subcontract. (ECF No. 25-3, p. 2). No evidence exists, therefore, to support that the Subcontract included plywood sheathing.

That said, evidence in the record demonstrates that MMA nonetheless agreed in the field to provide the exterior plywood sheathing and failed to do so, thus arguably supporting the backcharge. (*See* ECF No. 26-14, p. 3). GAJV's representative testified that he and MMA's representative "reached an agreement that to just move the project forward, that Grimberg would take care of the plywood sheathing at the parapet walls and Manganaro would take care of all the other exterior sheathing." (ECF No. 26-6, p. 6-7). Despite this agreement, "Manganaro did not do the sheathing on the rest of their project." (ECF No. 26-6, p. 31). A genuine issue of material fact exists as to whether MMA agreed in the field to provide the plywood sheathing which could

---

[7] GAJV's argument centers on the rough carpentry specification in the Prime Contract. (ECF No. 26, p. 11). That specification, however, identified a multitude of other materials for which MMA was undisputedly not responsible. (*See* ECF No. 25-17). The materials for which MMA was responsible, such as gypsum sheathing and vapor barrier, were specifically identified in the Subcontract. (ECF No. 25-3, p. 2). By contrast, plywood sheathing was not specifically identified in the Subcontract. *Id.* Thus, GAJV's argument that MMA should have known from identifying this specification in its Proposal that it was responsible under the Subcontract for plywood sheathing alone and not the other materials is not persuasive.

15

lead a reasonable juror to credit this backcharge. MMA's motion for partial summary judgment as to its claimed outstanding contract payments must be denied.

### B. Sealing Fire Walls

Next, MMA asserts that GAJV's backcharge for firestopping is invalid because firestopping was specifically excluded from MMA's scope of work under the Subcontract. (ECF No. 25-1, p. 25). According to GAJV, this backcharge is for MMA's failure to seal the fire walls within MMA's scope of work, not for firestopping. (ECF No. 26, p. 7). Here, the Subcontract excludes from MMA's scope of work "firestopping/caulking for *other trades.*" (ECF No. 25-3, p. 2) (emphasis added). It is undisputed that firestopping and caulking for MMA's own work was not excluded under the Subcontract. (ECF No. 25-3, p. 2; ECF No. 26-7, p. 36). GAJV provided MMA with photos of wall assemblies that failed to meet fire-rating standards, and these walls appear to be within MMA's scope of work. (ECF No. 26-8, p. 2-3, No. 26-6, p. 32). Viewing this evidence in the light most favorable to GAJV, although MMA was not responsible under the Subcontract for firestopping for other trades, this backcharge addresses whether MMA's own work complied with applicable fire-rating standards. Genuine issues of disputed fact as to the applicability of this backcharge preclude summary judgment in Plaintiff's favor.

### C. Labor Assistance

MMA also disputes the applicability of GAJV's backcharge for labor assistance based on insufficient documentation in support. (ECF No. 29, p. 8). GAJV attributes this backcharge to additional costs that GAJV had incurred to complete work not completed by MMA. (ECF No. 25-21, p. 2-3). However, sufficient evidence exists to justify, arguably, this backcharge. An email dated January 8, 2014 from GAJV to MMA notes that "[GAJV] continues to assist Manganaro in work areas in your contract you are not proceeding on." (ECF No. 25-21, p. 3).

Further, on February 5, 2014, GAJV notified MMA via email that its employee, "Manganaro is not finishing the circled area in the attached drawing. This is clearly in your contract…If this work is not completed shortly, Grimberg will be forced to complete this drywall work and back charge Manganaro accordingly," and included in the email photographs depicting the incomplete work. (ECF No. 25-21, pp. 4-5, 8). One area on the drawing is circled and marked with the notation "Manganaro need to finish." (ECF No. 25-21, p. 8). When asked about this drawing in its deposition, MMA agreed the circled area was in its scope of work under the Subcontract. (ECF No. 26-7, p. 33-34). Thus, sufficient evidence supports the labor assistance backcharge which a reasonable juror could credit.

### D. Sprinkler Adjustments

Finally, MMA claims that GAJV's backcharge for sprinkler adjustments is invalid for insufficient documentation justifying the costs. (ECF No. 25-1, p. 27). This backcharge stems from MMA's alleged failure to build the bulkheads in one room at the correct height, which in turn required GAJV to adjust the sprinklers so that they would not be blocked by the bulkheads. (ECF No. 25-4, p. 15-17).

Despite MMA's contention, once again the evidence is sufficient for a reasonable juror to credit this backcharge. MMA submitted into evidence correspondence to GAJV from American Fire Protection, Inc. explaining why the sprinkler heads needed adjustment and itemizing the costs for the same. (ECF No. 25-22, p. 9)("The additional sprinkler heads are require [sic] since the elevation as shown on the contract drawings for the bulk heads (12'-0") and the acoustical tile ceilings (13'-0"). What is installed in field is that the bulk heads at 11'-0" and drop ceilings are at 12'-6".) A spreadsheet from GAJV also details the costs and labor hours associated with adjusting the sprinklers. (ECF No. 25-22, p. 7). Testimony from GAJV representatives further

explained the necessity of adjusting the sprinkler heads. (ECF No. 25-4, p. 16-17). Viewing this evidence in the light most favorable to GAJV, genuine issues of material fact surround the applicability of this backcharge which, if credited, will affect MMA's claimed damages. Plaintiff's motion for partial summary judgment, therefore, is denied.

## CONCLUSION

For the aforementioned reasons, Use Plaintiff MMA's motion for partial summary judgment (ECF No. 25) is denied. A separate order follows.

 12/19/17
Date

Paula Xinis
United States District Judge